UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GAVIN GAUTREAUX | CIVIL ACTION |
| VERSUS | NO: 07-5653 |
| APACHE CORPORATION, ET AL. | SECTION: "S" (4) |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment and Motion *in Limine* and/or to Suppress Deposition "Corrections" filed by defendant, Apache Corporation (Doc. #100) are **DENIED.**

### BACKGROUND

On September 18, 2006, plaintiff, Gavin Gautreaux, was employed by Ocean Chef Catering, L.L.C., working as a cook on a platform owned by Apache Corporation. The platform was located in East Cameron block 353 on the Outer Continental Shelf in the Gulf of Mexico off the coast of Louisiana.[1]  Plaintiff alleges that he was injured when he hit the hull of the M/V JESSICA FAYE while attempting a swing rope transfer from the platform to the vessel. Plaintiff alleges that there

---

[1] The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq., adopts the law of the adjacent state as surrogate federal law to the extent that it is not inconsistent with other federal laws and regulations. 43 U.S.C. § 1333(a)(2)(A).  Thus, Louisiana law is applicable in this case.

were high seas and winds at time of the accident, but an Apache supervisor refused his request to obtain a helicopter or personnel basket transfer for him, and ordered him to make the swing rope transfer. Plaintiff also alleges that the lower portion of the platform was damaged, making a swing rope transfer unsafe. Plaintiff alleges that Apache was negligent in ordering a swing rope transfer under unsafe conditions, providing an unsafe platform, and for failing to provide a helicopter or personnel basket transfer.

Apache moved for summary judgment arguing that it is not liable to plaintiff because it did not have any employees on the platform on the day of the accident, and that the platform was not defective. At the time of the accident, the platform was engaged in a plug and abandon operation to shut down the well that it serviced. Apache hired independent contractors to perform this work. The alleged "Apache supervisor" who ordered plaintiff to perform a swing rope transfer was an independent contractor, Benny Barnhill, who worked for another independent contractor, Petroleum Engineers, Inc. ("PEI"). Barnhill was the PEI representative in charge of the day to day operations. Apache argues that it is not liable for the actions of its independent contractors because it was not engaged in an ultra hazardous activity and did not retain operational control over the independent contractors. Further, Apache argues that plaintiff has not shown that a defective condition of the platform caused the accident.

Plaintiff argues that Barnhill was a borrowed servant of Apache, not an independent contractor, and thus Apache is liable for his actions.

## ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.    Borrowed Servant v. Independent Contractor**

A borrowed servant is considered the employee of the borrowing employer, and is treated as such.  Standard Oil Co. v. Anderson, 29 S.Ct. 252 (1909); Denton v. Yazoo & M.V. Ry. Co., 52 S.Ct. 141 (1932).  The United States Court of Appeals for the Fifth Circuit has held that the following nine factors must be considered in determining borrowed employee status:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?

>(2) Whose work was being performed?
>
>(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
>(4) Did the employee acquiesce in the new work situation?
>
>(5) Did the original employer terminate his relationship with the employee?
>
>(6) Who furnished tools and place for performance?
>
>(7) Was the new employment over a considerable length of time?
>
>(8) Who had the right to discharge the employee?
>
>(9) Who had the obligation to pay the employee?

Billizon v. Conoco, Inc., 993 F.2d 104, 105 (5th Cir. 1993), reh'g denied, 3 F.3d 441 5th Cir. 1993). No one factor is determinative, but the United States Court of Appeals for the Fifth Circuit has stated that control is the "central" issue of borrowed employee status. Melancon v. Amoco Production Co., 834 F.2d 1238, 1245 (5th Cir. 1988), amended, 841 F.2d 572 (5th Cir. 1988). "The question of borrowed employee status is a question of law for the district court to determine." Billizon v. Conoco, Inc., 993 at 105. However, "in some cases, factual disputes must be resolved before the district court can make its legal determination." Id.

### 1. Who had control over Barnhill and the work he was performing, beyond mere suggestion of details or cooperation?

To determine who had control over the employee, the court must distinguish "between authoritative direction and control, and mere suggestion as to the details or the necessary

cooperation, where the work furnished is part of a larger undertaking." Ruiz v. Shell Oil Co., 413 F.2d 310, 313 (5th Cir. 1969) (quoting Standard Oil Co., 29 S.Ct. at 254).

Apache argues that it did not have any control over Barnhill. Barnhill was an independent contractor who worked for another independent contractor. Further, Apache contends that Barnhill did not report to anyone at Apache, but rather to another independent contractor hired to work as an engineer on the project, Gary Tumilson. Barnhill's contract with PEI provided that Barnhill was retained:

> to provide services of a supervisory/technical nature to the well or rig owner/operator, or to the turnkey contractor if applicable, . . . The Consultant shall have control and management of the project assignment and no right is reserved to PEI to direct or control the manner in which the assignment is performed, as distinguished from the results to be accomplished.

Apache contends that this paragraph shows that Barnhill had day to day control over the operations, and had authority to order a helicopter to transport plaintiff if he thought that it was necessary.

Apache did not present any evidence regarding exactly what Barnhill did on a daily basis, how he made decisions, how Apache obtained information regarding Barnhill's performance, or what occurred on the job. There is no deposition testimony from Barnhill or Terry Felter, another man who did the same job as Barnhill on the project when Barnhill was off. Also, Tumlison[2] has not been deposed. Thus, there are significant unresolved factual issue regarding Barnhill's responsibilities and Apache's control over him.

---

[2] Apache contends that Tumlison was an independent contractor. However, it is not necessary to analyze Tumlison's status as an independent contractor or borrowed employee to determine this motion for summary judgment. Because plaintiff alleges that Barnhill ordered plaintiff to perform the swing rope transfer, Apache's alleged responsibility for Barnhill's actions is the relevant issue herein.

5

**2.     Whose work was being performed?**

It is undisputed that Apache's work was being performed. Barnhill was involved in the plug and abandon operation of a well that was serviced by Apache's platform. Thus, this factor weighs in favor of borrowed employee status.

**3.     Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?**

Barnhill's contract with PEI states that he is an independent contractor, and shall not have employee status. Apache argues that PEI was also an independent contractor vis-a-vis Apache, and thus there was an understanding that Barnhill was an independent contractor. Although the parties may designate a person as an independent contractor, the parties' actions in carrying out the contract can impliedly modify or waive the express provision. Brown v. Union Oil Co. of California, 984 F.2d 674, 678 (5th Cir. 1993) (citing Melancon, 834 F.2d at 1245). As stated above, there are significant issues of fact regarding how Barnhill performed his job and how much control Apache exercised, which must be considered in determining borrowed employee status.

**4.     Did the employee acquiesce in the new work situation?**

Acquiescence is demonstrated by an employee's awareness of his work conditions and his choosing to continue working in them. See Brown v. Union Oil Co. of California, 984 F.2d 674, 678 (5th Cir. 1993) (citing Melancon, 834 F.2ds at 1246). Again, there are significant unresolved issues of fact regarding how Barnhill performed his job and how much control Apache exercised over him that prevent a finding on this element.

**5.      Did the original employer terminate his relationship with the employee?**

The focus of this factor is on the lending employer's relationship with the employee while the borrowing occurs. Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615, 617-18 (5th Cir. 1986). PEI's corporate representative testified that PEI had very little contact with Barnhill during the job. PEI would receive morning reports and time sheets from Barnhill, but no other communication. PEI did not control Barnhill's work. Therefore, this factor weighs in favor of borrowed employee status.

**6.      Who furnished tools and place for performance?**

The work was completed on Apache's platform. Also, Apache authorized the work orders and paid for the rented equipment. Thus, this factor weighs in favor of borrowed employee status.

**7.      Was the new employment over a considerable length of time?**

"Where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee." Capps, 784 F.2d at 618. The United States Court of Appeals for the Fifth Circuit has held that a one month period of employment is neutral. See Brown, 984 F.2d at 679.

Barnhill's contract with PEI began on May 31, 2006, and continued day to day until the completion of Apache's plug and abandon project. The accident occurred on September 18, 2006. At that time, Barnhill had been working on the Apache project for fifteen days per month for over three months. This is a long period of time, therefore the factor favors borrowed employee status.

**8.      Who had the right to discharge the employee?**

The discharge factor is satisfied if the borrowing employer has the right to terminate the borrowed employee's services with the borrowing employer, even if the borrowing employer cannot terminate the borrowed employee's position with the nominal employer. Melancon, 834 F.2d at 1246.

The contract between Barnhill and PEI does not mention termination. However, PEI's corporate representative testified that Apache could terminate Barnhill without notice to PEI. Therefore, this factor weighs in favor of borrowed employee status.

**9.      Who had the obligation to pay the employee?**

PEI paid Barnhill 70% of the contract day rate that it received from Apache. Thus, Apache ultimately paid for Barnhill's services. This arrangement supports a finding of borrowed employee status. See Melancon, 834 F.2d at 1246. Therefore, this factor weighs in favor of borrowed employee status.

The second, fifth, sixth, seventh, eighth, and ninth factors weigh in favor of borrowed employee status for Barnhill. However, there are significant unresolved issues of material fact that are relevant to the first, third, and fourth factors which prevents the court from determining whether they weigh in favor borrowed employee status, and thus preclude summary judgment on the issue of Barnhill's status.

**B.     Condition of the Platform**

Louisiana Civil Code article 2322 provides that the owner of a building is liable for injury resulting from the building's "ruin, when this is caused by negligent to repair it, or when it is the result of a vice in its original construction . . . upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."  To prevail, the plaintiff must prove that (1) there was a building;  (2) the defendant owned it; and (3) his injury was caused by a "ruin" resulting from a vice in original construction or neglect to repair.  Olsen v. Shell Oil Co., 365 So.2d 1285, 1289 (La. 1978).

In Olsen, 365 So.2d at 1289, the Supreme Court of Louisiana held that a fixed drilling platform is a building within the meaning of article 2322.  Further, it is undisputed that Apache owned the platform in question.

Apache argues that there was no "ruin" that caused plaintiff's injury because plaintiff testified in his deposition that the accident was not caused by a condition of the platform, but rather that the vessel came up higher than plaintiff expected, which threw off his timing and location.

Plaintiff contends that there are genuine issues of fact regarding whether a condition of the platform caused his injury.  Plaintiff's purported oilfield liability expert states in his report that the construction of the platform contributed to the accident.

Apache contends that summary judgment is appropriate because of plaintiff's testimony regarding the condition of the platform.  However, Apache does not offer any expert testimony to contradict plaintiff's purported expert testimony.  Plaintiff's perception of the cause of the accident

9

is not necessarily determinative as to what actually occurred. Therefore, there are genuine issues of material fact that preclude summary judgment.

**C.     Plaintiff's Deposition Corrections**

Rule 30(e) of the Federal Rules of Civil Procedure provides that

> If requested by the deponent . . . before completion of the deposition, the deponent shall have 30 days after being notified by the [court reporter] that the transcript . . . is available in which to review the transcript . . . and, if there are changes in the form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.

Plaintiff's deposition was taken on May 26, 2010. The court reporter's cover letter to the deposition transcript is dated June 16, 2010. On July 21, 2010, plaintiff filed an errata sheet in which changes his testimony relating to the accident and the condition of the platform.[3] Specifically plaintiff changes his deposition testimony as follows:

> Deposition:
>
> Q: Okay. When you made the second attempt, which is the final attempt to get onto the vessel, where were your feet when last touching any part of the platform?
>
> A: They were on the edge of that (pointing) Plus 10.
>
> Errata:
>
> A: My feet were on the outside of the railing, I had to climb over, and hold onto the railing from the outside so that I would not fall, and I had to hold on to the rope.

---

[3] The court notes that the errata sheet appears to be technically untimely. However, there is no proof of the day that the court reporter sent the transcript or when plaintiff received it. Therefore, it would be inequitable to exclude the errata sheet based on timeliness.

10

Deposition:

Q: Okay. Is there anything about the condition of the Plus 10 that - that contributed to your accident?

A: Not that I can think of.

Errata:

A: Yes, the Plus 5 was unstable, and the ladder was broken on the bottom and attached on the top, so that the latter moved with – the wave action. And there was a three and a half to four foot railing on the outside edge. I had to climb over it to be able to swing away, I do not consider that a condition, but rather the way it was constructed.

Plaintiff made substantive changes to his deposition testimony. The United States Court of Appeals for the Fifth Circuit has not ruled on whether Rule 30(e) permits a deponent to use an errata sheet to make substantive changes to his deposition testimony. In Greenway v. Int'l Paper Co., 144 F.R.D. 322 (W.D. La. 1992) the court stated:

> The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one would merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

However, many federal courts find that Rule 30(e) permits a witness to change the form or the substance of deposition testimony. See e.g. Reilly v. TXU Corp, 230 F.R.D. 486 (N.D. Tex. 2005). In that case, both the original and amended versions of the changed deposition testimony remain in the record, and the witness must explain the changes to the fact finder. See Elwell v. Conair, Inc., 145 F.Supp.2d 79, 87 (D. Me. 2001).

It is appropriate in this case to permit the changes to remain on the record because the plaintiff made the changes before Apache moved for summary judgment. Thus, Apache's motion *in limine* is DENIED, and the court will permit plaintiff's errata sheet to remain in the record, but he may be cross examined on the changes and the reasons therefore.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment and Motion *in Limine* and/or to Suppress Deposition "Corrections" filed by defendant, Apache Corporation (Doc. #100) is **DENIED.**

New Orleans, Louisiana, this __8th__ day of October, 2010.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**